IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) No. 1:21-cv-22330-PAS |
| v. | ) ) ) |
| DOCTOR DIABETIC SUPPLY, LLC, GEORGE T. HEISEL, DDS HOLDINGS, INC., SANARE, LLC and JOHN DOES 1-10, | ) ) ) ) ) |
| Defendants. | ) ) |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**

Plaintiff, Physicians Healthsource, Inc. ("Physicians Healthsource"), on behalf of itself and a class of similarly-situated persons (identified herein as the "Class"), respectfully requests that this Court enter an order (1) preliminarily approving the proposed class-wide Settlement Agreement attached hereto as <u>Exhibit A</u> (the "Agreement"), (2) approving the forms of Class Notice attached as Exhibits 5A and 5B to the Agreement and authorizing their distribution to the Class, and (3) setting dates for opt-outs, objections, and a fairness hearing. A proposed Order Preliminarily Approving Class Action Settlement and Approving Class Notice is attached as Exhibit 4 to the Agreement and submitted as <u>Exhibit B</u> to this motion.

**I.      BACKGROUND AND SUMMARY OF SETTLEMENT**

1.      Plaintiff's Class Action Complaint alleges that Defendants violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and regulations promulgated by the Federal Communications Commission, by faxing advertisements that did not contain a clear and conspicuous notice that complies with the TCPA and FCC regulations.

1

2. Defendants include Doctor Diabetic Supply, LLC ("DDS") and its past and current owners/parents. Specifically, Sanare, LLC is DDS's current parent. George Heisel and DDS Holdings, Inc. (collectively, "Heisel") are the prior owners of DDS. Pursuant to the DDS purchase agreement (the "Purchase Agreement"), DDS Holdings owes DDS and Sanare indemnity for liability based on activity predating the Purchase Agreement. Such liability includes liability in this case for the faxes sent in 2008 (the "2008 Faxes").

3. Further, DDS and Sanare promptly tendered the defense of this litigation to their insurers, Essex Insurance Company ("Essex"), Endurance American Specialty Insurance Company ("Endurance"), Federal Insurance Company ("Federal") (Essex, Endurance, and Federal, collectively, are "the Insurers."). The Policies issued by the Insurers to DDS are identified in the Settlement Agreement. The Insurers each denied coverage and refused to defend DDS and Sanare in this Litigation.

4. After reviewing and analyzing the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, the likelihood of a damage award in excess of that negotiated in this settlement, the protracted nature of the litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals, Plaintiff and DDS reached an agreement to settle this case on a class-wide basis. The parties negotiated their Settlement Agreement (Exhibit A) in good faith and at arm's length.

5. Plaintiff and DDS provided the proposed agreement on November 11, 2013, to DDS Holdings, Inc. ("DDS Holdings") in order to obtain consent under the Purchase Agreement. Under the Purchase Agreement, DDS has an obligation to seek consent but that consent may not be unreasonably withheld. On November 14, 2013, DDS Holdings elected to withhold consent

but failed to identify any terms that it found to be unreasonable. A copy of the November 14 Letter is attached as Exhibit C.

6.  Only after DDS Holdings was provided the proposed agreement and an opportunity to participate, suggest changes, join the settlement, and/or consent did Plaintiffs and DDS proceed with the Settlement Agreement. The Settlement Agreement was finalized and executed on December 6, 2013, over three weeks after DDS Holdings was given the proposed terms.

7.  Because of DDS's inability to pay except through (1) indemnification from DDS Holdings and (2) through their insurance policies, Plaintiff's attorneys decided that the settlement is fair, reasonable, and adequate for the Settlement Class. After both written and deposition discovery, no evidence was developed regarding any involvement by the parent company, Sanare.

8.  The key terms of the Agreement are as follows:

(a)  Judgment and Payment. Plaintiff moves the Court to enter judgment in favor of the Settlement Class and against DDS in the total amount of $8,720,000.00 for all claims that were brought or could have been brought arising out of the at least 17,440 faxes sent in July 2008 and September 2011 (the "Judgment"). DDS does not oppose the motion. DDS will pay the cost of notice of this settlement, up to $10,000.00. In exchange for the Settlement, and except for the payment of notice costs referenced in this paragraph, Plaintiff and the Class covenant not to execute against DDS or their assets to collect the Judgment, other than (1) against DDS Holdings through operation of DDS Holdings' indemnification obligations; and (2) against the Insurers.

  (b) <u>Covenant Not to Execute</u>. Plaintiff and the Class have agreed not to seek to execute against DDS or their assets to collect the Judgment, other than (1) against DDS Holdings through operation of DDS Holdings' indemnification obligations; and (2) against the Insurers.

  (c) <u>Class Notice.</u> The parties propose to send notice by fax to the fax numbers in question and also by publication in one of the bi-monthly issues of the Annals of Internal Medicine. The proposed notices are attached to the Agreement as Exhibits 5A (fax notice) and 5B (publication notice).

  (d) <u>Attorney's Fees and Costs and Incentive Award</u>. Class counsel applies to receive attorney's fees of 30% of the future recovery from DDS Holdings and/or any of the Insurers, plus out-of-pocket litigation expenses. DDS does not oppose this request. Class counsel also applies for Plaintiff to receive a $15,000 incentive award to be paid only from a recovery from DDS Holdings and/or any of the Insurers. DDS does not oppose this request.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

9. "Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. May 14, 2007), *citing* David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed.2004). "At the preliminary-approval step, the Court is required to 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id., quoting* Annotated Manual for Complex Litigation § 21.632. "A proposed settlement should be preliminarily approved if it 'is within the range of possible approval or, in other words, [if] there is "probable cause" to notify the class of the

4

proposed settlement.'" *Id.* (*quoting Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825, 827 (E.D.N.C.1994) and *Armstrong v. Board of School Directors,* 616 F.2d 305, 312 (7th Cir.1980)). "In the second step, following appropriate notice to the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement." *Id.*

10. A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2). *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed.Appx. 429, 434 (11th Cir. 2012). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1341 (S.D. Fla. 2011), *quoting In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement"); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1341, *quoting In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).

11. The factors for consideration are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length and expense of further litigation; (5) opposition to the settlement; and (6) the stage of the proceedings at the time of settlement.

*See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011), *citing In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009).

12. Here, consideration of these factors shows the proposed settlement is within the range of possible approval, so notice should be sent and a fairness hearing should be scheduled. Plaintiff and DDS (the "Parties") agree that the Settlement Class includes thousands of persons to whom DDS sent at least 17,440 advertisements by fax. This Court recently granted class certification in a similar case. *See A Aventura Chiropractic Center, Inc. v. Med Waste Management, LLC*, 2013 WL 3463489 (S.D. Fla. July 3, 2013). While Defendants have raised defenses to liability, the TCPA is essentially a strict liability statute. *See Alea London Limited v. American Home Services, Inc.,* 638 F.3d 768, 776 (11th Cir. 2011); *Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1311 (11th Cir.2008).

13. A finding of DDS's liability to the Settlement Class under the TCPA, with statutory damages of $500 per fax, would result in a damage award of at least $8,720,000. And the statute allows for treble damages. Thus, the range of potential damages is at least $8,720,000 to $26,160,000.

14. Given DDS's inability to pay any judgment more than $10,000 from anything other than its indemnity rights or insurance assets, a payment of $10,000 from DDS plus a judgment collectible from DDS Holdings and/or DDS's insurance is a reasonable compromise of the Class's claims and well within the range of potential recovery. DDS would have to file for bankruptcy if the Class were to pursue collection of a money judgment solely against DDS. As an unsecured judgment creditor, the Class would likely recover less than the costs and expenses of litigating their claims in bankruptcy, and would be forced to seek recovery from the insurance anyway.

15. The Purchase Agreement obligates DDS Holdings to indemnify DDS for liability stemming from the 2008 Faxes. Additionally, the Insurers issued policies covering the time periods of both the 2008 and 2011 faxes. That insurance provides a source from which the Settlement Class can seek compensation for their claims against DDS. DDS promptly tendered its defense in the Litigation to the Insurers. The Insurers each denied coverage and refused to defend DDS and Sanare in this Litigation.

16. Because DDS's indemnification rights against DDS Holdings and DDS's insurance policies are the only practical source for the satisfaction of any judgment in the Class's favor against DDS above $10,000.00, it is in the Class's best interests to avoid future litigation costs that do not relate to obtaining that insurance. Further litigation of the underlying claims against DDS in this Court, on appeal, or in bankruptcy will be expensive for the Class and will not move the class members closer to collecting any money. On the other hand, if this action is settled, the Class can concentrate the efforts on seeking recovery from DDS Holdings and the Insurers. The settlement should be preliminarily approved because it will minimize the inevitable costs of future litigation of this matter.

17. Because notice of the settlement has not yet been sent, any opposition by absent class members is unknown and can only be addressed at the final approval hearing.

18. The stage of proceedings and amount of discovery supports preliminary approval. The Settlement Class includes the thousands of persons to whom DDS sent at least 17,440 facsimiles in July 2008 and September 2011. The settlement was reached after written and oral discovery and the exchange of sufficient information detailing DDS's faxing activities.

### III.  THE COURT SHOULD APPROVE NOTICE TO THE SETTLEMENT CLASS.

19. The parties propose to issue notice by faxing the Class Notice to each member of the Class and also by publication in the Annals of Internal Medicine. A copy of the proposed fax and publication notices are attached as Exhibits 5A and 5B to the attached Agreement.

20. Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F.2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

21. Rule 23 (C)(2)(B) requires that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the notice will be sent to the class members using their known fax number. And, as a backstop, the notice will also be provided in the most widely circulated applicable medical journal.

22. Also, the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)." Here, the proposed notice satisfies all of these requirements.

23. Finally, Rule 23 (e)(1) provides that notice should be given in "a reasonable manner." Here, the parties have agreed to a reasonable manner of notice; fax to the fax numbers in question and publication.

24. In conclusion, the proposed notice meets the legal standards for appropriate notice and satisfies Rule 23. Therefore, the Court should approve the proposed notice and authorize its dissemination to the Settlement Class.

## IV. THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING.

25. Finally, Plaintiff requests that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 6 to the attached Agreement.

## V. CONCLUSION.

WHEREFORE, Plaintiff, Physicians Healthsource, Inc., respectfully requests that this Court enter a preliminary approval order in the form attached as Exhibit 4 to the Agreement (and Exhibit B hereto), granting preliminary approval of the proposed settlement, directing that the members of the Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibits 5A & 5B to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing.

s/ Ryan M. Kelly
Ryan M. Kelly, Esq.
Anderson + Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
rkelly@andersonwanca.com
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
*Counsel for Plaintiff Physicians Healthsource, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

       s/ Ryan M. Kelly