**EXHIBIT A**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into on the date of execution between PHYSICIANS HEALTHSOURCE, INC. ("Plaintiff") on behalf of itself and as the putative representative of the following putative class:  All persons who (1) on or about July 1, 2008 or September 20, 2011, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Doctor Diabetic Supply, LLC ("DDS" or "Settling Defendant"), (3) from whom DDS did not obtain prior express permission or invitation to send those faxes, (4) with whom DDS did not have an established business relationship, and (5) which did not display a proper opt out notice (hereinafter, the "Class"), and DDS and Sanare, LLC ("Sanare").  The signatory parties to this Settlement Agreement are collectively referred to as the "Parties" and each a "Party."

WHEREAS, Plaintiff,  Settling Defendant, and Sanare are parties to a civil action titled *PHYSICIANS HEALTHSOURCE, INC. v. DOCTOR DIABETIC SUPPLY, LLC, SANARE, LLC, DDS HOLDINGS, INC., and GEORGE HEISEL,*  Case No. 12 CV 22330-SEITZ/SIMONTON, pending in the United States District Court for the Southern District of Florida and assigned to Judge Patricia A. Seitz ("the Litigation").  DDS Holdings, Inc. and George Heisel are hereinafter referred to as "Non-Settling Defendants."  The Settling Defendant, Sanare, and Non-Settling Defendants are hereinafter referred to as "Defendants" and each a "Defendant"; and

WHEREAS, Plaintiff has alleged in the Litigation (1) that Defendants violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 and FCC implementing regulations by faxing advertisements without the recipients' prior express invitation or permission, and (2) that Defendants are liable for conversion of the Class's fax machine paper, toner, and memory and valuable time; and

**WHEREAS**, Settling Defendant desires to settle all claims, demands, and liabilities that Plaintiff and a class of similarly-situated persons asserted or could have asserted in the Litigation, including, but not limited to, with respect to the facsimiles sent on or about July 1, 2008 and on or about September 20, 2011 (the "Faxes at Issue") (collectively, the "Settled Claims"); and

**WHEREAS**, Plaintiff's counsel have investigated the relevant facts and law relating to the Litigation; and

**WHEREAS**, the Parties have agreed on a compromise and settlement that is in the best interests of all Parties, including the Class; and

**WHEREAS**, Plaintiff alleges that the Class as to the 2008 Fax and the 2011 Fax includes all persons to whom DDS caused to be sent at least 17,440 fax advertisements without prior express permission or invitation and without the opt out language required by 64 C.F.R. 1200; and

**WHEREAS,** Plaintiff alleges that on or about July 1, 2008  DDS sent at least 7,440 fax advertisements which Plaintiff alleges were sent without prior express permission or invitation, and that on or about September 20, 2011, DDS sent at least 10,000 fax advertisements which Plaintiff alleges were sent without prior express permission or invitation; and

**WHEREAS,** a finding of liability under the TCPA with statutory damages of $500 per unsolicited fax would result in a damage award exceeding $3,720,000 (and, if the violation were found to be willful, $1,500 per unsolicited fax for a total of $11,160,000) as to the 2008 fax, and, as to the 2011 fax, exceeding $5,000,000 (and if the violation were found to willful, $1,500 per unsolicited fax for a total of $15,000,000), before prejudgment interest; and

**WHEREAS**, such a judgment would bankrupt Settling Defendant and cause the dissolution of its business; and

**WHEREAS,** the Settling Defendant and Sanare have provided their financial information to Plaintiff and Settling Defendant and Sanare do not have the financial ability to continue defending this case or to fund a class settlement; and

**WHEREAS**, Essex Insurance Company ("Essex") issued to DDS f/k/a Doctor Diabetic Supply, Inc., its Commercial General Liability Policy Number 3CZ0046, covering the period from June 21, 2008 to June 21, 2009, as supplemented by its Excess Liability Policy Number XMR09004 covering the period from June 21, 2008 to June 21, 2009; and

**WHEREAS**, DDS provided notice of the Litigation to Essex, however, Essex refused to defend and denied coverage; and

**WHEREAS**, Defendants are making no warranty or representation that Plaintiff and the Class will be able to recover from Essex; and

**WHEREAS**, Endurance American Specialty Insurance Company ("Endurance") issued to DDS its Commercial General Liability Policy Number GLO10003227800, covering the period from June 21, 2011 to June 21, 2012; and

**WHEREAS**, DDS provided notice of the Litigation to Endurance, however, Endurance refused to defend and denied coverage; and

**WHEREAS**, Defendants are making no warranty or representation that Plaintiff and the Class will be able to recover from Endurance; and

**WHEREAS**, Federal Insurance Company ("Federal") issued its Life Sciences Insurance Program for DDS Policy Numbers 3592-53-79 and 0035925380 covering the period from June 24, 2011 to June 24, 2012; and

**WHEREAS**, DDS provided notice of the Litigation to Federal, however, Federal refused to defend and denied coverage; and

**WHEREAS**, Defendants are making no warranty or representation that Plaintiff and the Class will be able to recover from Federal (Essex, Endurance, and Federal are the "Insurers" and each an "Insurer"); and

**WHEREAS,** Plaintiff alleges that DDS, Non-Settling Defendant and Sanare are all directly liable for the Faxes at Issue;

**WHEREAS**, DDS Holdings, Inc. warranted and represented in the Membership Interest Purchase Agreement dated as of February 11, 2011 between DDS Holdings, Sanare, DDS, and George T. Heisel (the "MIPA") that DDS had conducted its business in accordance with and has otherwise material complied with all laws, which necessarily includes the TCPA.  The MIPA is attached as Exhibit 1; and

**WHEREAS**, DDS Holdings, Inc. agreed in the MIPA  to indemnify Settling Defendant and Sanare from and against all losses suffered arising out of, related to, or otherwise the result of any breach of this representation and warranty relating to violations of law existing as of February 11, 2011;

**WHEREAS**, in addition to the indemnification obligations of DDS Holdings in the MIPA, non-parties Heisel Irrevocable Trust U/A/D February 25, 2005, George T. Heisel Revocable Trust U/A/D January 31, 2005, Heisel 2007 Grat U/A/D April 10, 2007, and The George T. Heisel 2010 Trust U/A/D September 28, 2010 (collectively, the "Trusts" and each a "Trust") guaranteed the indemnification obligations of DDS Holdings by letter agreement dated as of February 11, 2011 ("Shareholder Side Letter").  A copy of the Shareholder Side Letter is attached as Exhibit 2; and

**WHEREAS**, the indemnification obligations of DDS Holdings under the MIPA and the guaranty obligations of the Trusts under the Shareholder Side Letter apply to the 2008 Fax and apply to the amount of $3,720,000.00, exclusive of interest, attorneys' fees and costs (hereinafter, the "Allocation"); and

**WHEREAS**, DDS and Sanare provided notice of the Litigation to DDS Holdings and the Trusts, a copy of which is attached as Exhibit 3, but DDS Holdings and the Trusts have failed to indemnify DDS and Sanare against the Litigation; and

**WHEREAS**, DDS and Sanare have brought claims against DDS Holdings and the Trusts based on the alleged prior violations of the TCPA by DDS contained in the Litigation in Counts IV and V of the Second Amended Counterclaim in the action styled DDS HOLDINGS, INC. v. SANARE, LLC AND DOCTOR DIABETIC SUPPLY, LLC/SANARE, LLC AND DOCTOR DIABETIC SUPPLY, LLC, COUNTER-PLAINTIFFS V. DDS HOLDINGS, INC., THE HEISEL IRREVOCABLE TRUST U/A/D FEBRUARY 25, 2005, THE GEORGE T. HEISEL REVOCABLE TRUST U/A/D JANUARY 31, 2005, THE HEISEL 2007 GRAT U/A/D APRIL 10, 2007, and THE GEORGE T. HEISEL 2010 TRUST U/A/D SEPTEMBER 28, 2010, Case No. 11-26481-CA-40, Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Fax Indemnification Litigation"); and

**WHEREAS**, Settling Defendant and Sanare are making no warranty or representation that Plaintiff and the Class will be able to recover from Non-Settling Defendants or the Trusts; and

**WHEREAS**, by Order dated May 23, 2013, the Court dismissed the Second Amended Complaint as against Sanare to the extent that the claims therein relate to a fax sent to Plaintiff by Defendants on or about July 1, 2008, finding, among other things, that the Second Amended

Complaint indicated that Sanare purchased DDS in 2011, that Sanare did not participate in sending the 2008 fax, and that there is no valid claim against Sanare as to the 2008 fax; and

**WHEREAS**, the evidence adduced to date during discovery failed to support the liability of Sanare as to the 2011 fax; and

**WHEREAS**, after considering (1) the benefits to the Class, (2) the fact that Settling Defendant would likely have to file for bankruptcy if the settlement were not approved and Settling Defendant lost the Litigation, (3) the attendant risks, costs, uncertainties, and delays of litigation, (4) that the Settling Defendant does not have the financial ability to continue to defend this case or to fund a class settlement, (5) the claims against the Insurers; and (6) the claims against the Non-Settling Defendants and the Trusts, Plaintiff and its counsel have concluded the terms and conditions provided for in this Settlement Agreement are fair, reasonable, and adequate, and in the best interests of the Class as a means of resolving the Litigation; and

**WHEREAS**, after considering, among other things, the additional expense and delay that would result from the continuation of the Litigation, and the exposure to liability greatly exceeding its ability to pay and the limit of its indemnity rights under the MIPA, Settling Defendant and Sanare have determined that it is appropriate to resolve the Litigation upon the terms and conditions this Settlement Agreement provides; and

**WHEREAS**, this Settlement Agreement has been negotiated among the Parties in good faith and at arm's length; and

**WHEREAS**, the Settling Defendant stipulates and agrees and Plaintiff does not have sufficient information to dispute that the members of the Class are physicians who prescribe diabetic testing supplies for diabetic patients and that the publication that is most likely to be

read and is of most widespread circulation among such physicians is the Annals of Internal Medicine; and

**WHEREAS**, the Parties stipulate and agree that the claims of the Class (including Plaintiff) against Settling Defendant and Sanare should be and are hereby compromised and settled, subject to the approval of the Court, upon the following terms and conditions:

1.   Recitals.  The above described recitals are incorporated herein and made a part hereof.

2.   For Settlement Only.  This Settlement Agreement is entered into for purposes of resolving all disputes between Settling Defendant and the Class including, but not limited to, the Settled Claims.  The assertions, statements, and representations made herein are for settlement purposes only and the Parties expressly agree that if this Settlement Agreement is not finally approved, this Settlement Agreement is null and void, is not admissible, and may not be used by any Party, non-Party, third party, opt-out Class Member, or putative Class Member for any purpose.

3.   Preliminary Approval and Class Notice.  The Parties agree to jointly move the Court for the entry of an order preliminarily approving this Settlement Agreement.  The Parties will request that the Court enter an "Order Certifying the Settlement Class, Preliminarily Approving the Class Action Settlement, and Approving the Class Notice" in ("Preliminary Approval Order") substantially the form attached here as Exhibit 4.  Additionally, the Parties will request that the Court approve a "Notice of Class Action and Proposed Settlement",which will be sent by fax to the members of the Class and published in one of the bi-monthly issues of the Annals of Internal Medicine.  A copy of the proposed notice to be sent by fax is attached as

Exhibit 5A and a copy of the proposed notice to be published in one of the bi-monthly issues of the Annals of Internal Medicine is attached as Exhibit 5B.

4.    Payment for Initial Notice.  If the Court preliminarily approves the settlement, then Settling Defendant will pay the costs for class notice as outlined in Paragraph 3 above, which shall not exceed $10,000.

5.    Judgment.  DDS agrees to the entry of a judgment in the total amount of $8,720,000 (the "Judgment") on Counts I and II of the Second Amended Complaint in the Litigation, inclusive of costs, against DDS and in favor of the Class, *provided, however,* that the Judgment shall not attach to any accounts or accounts receivable of DDS and may not be satisfied from or executed on any assets or property of Settling Defendant, Sanare, or their officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, and assigns, other than against (1) the Insurers; (2) DDS Holdings (and the Trusts) for their liability to indemnify Settling Defendant and Sanare for the July 1, 2008 fax in accordance with the Allocation; and (3) George T. Heisel based on the alleged transmission of the 2008 Fax which was allegedly transmitted to at least 7,440 persons with his knowledge and consent on or about July 1, 2008, when Heisel owned, operated, and controlled Doctor Diabetic Supply, Inc. n/k/a DDS. The Judgment will be effective as of the Effective Date of the Settlement Agreement as defined herein.  If the Court does not grant final approval of the settlement contemplated under this Settlement Agreement or if the Court's Order granting final approval is reversed or substantially modified on appeal, then this Judgment shall be null and void, not admissible, and may not be used by any Party, non-Party, third party, opt-out Class Member, or putative Class Member for any purpose.  Furthermore, Settling Defendant waives no defenses and Plaintiff agrees that nothing contained in this Settlement Agreement or revealed in

negotiating the same can be used in prosecuting this Litigation if the Judgment becomes null and void for any reason.  The Judgment shall indicate on its face that it may only be satisfied from the Insurers, the Non-Settling Defendants, and the Trusts.   The Judgment may not be satisfied from attaching, executing on, or otherwise acquiring any other asset or property of Settling Defendant or its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (other than the Non-Settling Defendants or the Trusts).

    5.1.    <u>Assignment of Claims and Rights Against The Insurers</u>.  As part of this Settlement Agreement, Settling Defendant and Sanare will assign to the Class (as represented by Plaintiff and its attorneys), to the full extent permitted by law or otherwise, all of Settling Defendant's and Sanare's claims against and rights to payments, including but not limited to bad faith claims, from any Insurer who issued a policy to any of the Defendants covering claims for liability for the Faxes at Issue.

    5.2.    <u>Assignment of Claims and Rights Against Non-Settling Defendants and Trusts</u>. As part of this Settlement Agreement, Settling Defendant and Sanare will assign to the Class (as represented by Plaintiff and its attorneys), to the full extent permitted by law or otherwise, the legal claims and choses in action against DDS Holdings and the Trusts contained in Counts IV and V of the Fax Indemnification Litigation in accordance with the Allocation.  For avoidance of doubt, Settling Defendant and Sanare are not assigning the MIPA itself.

    6.    <u>Covenant Not to Execute and Not to Sue</u>.  The Class agrees not to seek to execute on, attach or otherwise acquire any of the property or assets of Settling Defendant and/or its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns of any kind other than claims against Non-Settling Defendants

to satisfy or recover on the Judgment, including, but limited to, taking post-judgment discovery, issuing writs of garnishment, execution, or replevin, and agrees to seek recovery to satisfy the Judgment only against the Insurers, the Non-Settling Defendants, or the Trusts.  Class counsel will continue to prosecute the Litigation against Non-Settling Defendant and the Fax Indemnification Litigation against DDS Holdings and the Trusts in accordance with the Allocation, and may initiate litigation against the Insurers.  The Parties recognize and acknowledge that it is possible that no recovery may be obtained from the Insurers, Non-Settling Defendants or the Trusts.

      7.    <u>Condition Precedent</u>.  It shall be a condition precedent for the validity and enforceability of this Settlement Agreement that the Court shall find that

    (a)    The Settlement Agreement was made in reasonable anticipation of potential liability against DDS which would arise from a finding that (i) 7,440 faxes were transmitted on or about July 1, 2008 and (ii) 10,000 faxes were transmitted on or about September 20, 2011, all without receiving prior express permission and without the required opt-out notice;

    (b)    The amount of the Judgment is fair and reasonable because it is within the range of statutory damages that could be awarded for the claims made by the Class and potential damages that could be awarded if the Class prevailed on its claims;

    (c)    Settling Defendant's decision to settle is reasonable based on the risk of an adverse judgment, the cost of defense and the uncertainties of litigation;

(d)     The evidence adduced during discovery supports an inference that a total of 7,440 faxes were transmitted or about July 1, 2008;

(e)     The evidence adduced during discovery supports an inference that a total of at least 10,000 faxes were transmitted on or about September 20, 2011;

(f)     The Court dismissed all claims against Sanare as to the 2008 fax and the evidence adduced during discovery failed to support the liability of Sanare for the 2011 fax; and

(g)     Defendants did not intentionally, willfully, or knowingly violate the TCPA.

If the Court does not make these findings or substantially similar findings, this Settlement Agreement and any and all representations made hereunder shall be null and void, not discoverable by any Party, non-Party, third party, opt-out Class Member, or putative Class Member and not admissible in any proceeding by such named persons or entities for any purpose.

8.    <u>Effective Date</u>. This Settlement Agreement shall be effective on the date on which the final order, judgment, and decree become a final, non-appealable order, or if an appeal has been sought, after the disposition of any such appeal from any such final order, judgment and decree, which disposition approves the Court's final order, judgment and decree, and the terms and provisions of this Settlement Agreement, and the consummation of the settlement in accordance with the terms and provisions of this Settlement Agreement (hereinafter the "Effective Date") .

9.      <u>Class Enjoined</u>.  On the Effective Date, Plaintiff and the Class members who do not opt out as described below will be forever barred and permanently enjoined from directly, indirectly, representatively or in any other capacity, filing, commencing, prosecuting, continuing, litigating, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from any other lawsuit, any other arbitration, or any other administrative, regulatory, or other proceeding against Settling Defendant and any of its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (excluding the Non-Settling Defendants or the Trusts)in any jurisdiction based on or relating in any way whatsoever to the claims and causes of action, or the facts or circumstances relating thereto, in or underlying the Litigation and/or the Settled Claims as defined in this Settlement Agreement; and all persons shall be forever barred and permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class or collective action against Settling Defendant and any of its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (excluding the Non-Settling Defendants or the Trusts) (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who have not timely excluded themselves from the Class if such other lawsuit is based on or related to the Faxes at Issue.

Plaintiff and each Class Member, and their heirs, executors, administrators, representatives, agents, successors and assigns, and any and all other Persons claiming through or by virtue of them, have covenanted with Settling Defendant and any of its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (excluding the Insurers, Non-Settling Defendants or the Trusts)not to

execute on the Judgment against Settling Defendant or any of its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (excluding the Insurers, Non-Settling Defendants or the Trusts), but rather have agreed to pursue collection of the Judgment against the Insurers, Non-Settling Defendants, and the Trusts only. This provision does not release the Judgment against Settling Defendant to be entered herein, nor does it release the asserted claims that are the basis for the entry of the Judgment or the right to enforce the Judgment (which claims are merged into this Judgment) in favor of the Plaintiff and the Class against the Insurers, Non-Settling Defendants, or the Trusts.

10.     <u>Relief to Plaintiff and the Class</u>.  The $8,720,000 on Counts I and II will comprise the Class recovery.  Plaintiff, the Class, and their counsel, at their sole expense, will pursue and attempt to recover the Judgment against the Insurers, the Non-Settling Defendants, and the Trusts.  Anderson + Wanca ("Class Counsel") shall use their best efforts to recover on the Judgment from the Insurers, the Non-Settling Defendants, and the Trusts.  Each Class member, including Plaintiff, that does not opt out or exclude itself from the Settlement, will receive a *pro rata* share of the amount recovered from the Insurers, the Non-Settling Defendants and/or the Trusts by judgment or settlement.  This amount is subject to further litigation and potential compromise with the Insurers, the Non-Settling Defendants, and the Trusts, a deduction of attorney's fees of 30 percent plus litigation expenses for Plaintiff's attorneys, and an incentive award not exceeding $15,000.00 to the Plaintiff for representing the Class.  Any amount recovered pursuant to the Judgment and remaining after payment of all costs of class notice and claims administration, the incentive payment to Plaintiff, the attorney's fees and litigation expenses to Plaintiff's attorneys, and the amounts paid to and received by the Class members, shall be paid as a *cy pres* remedy to charities proposed by the Plaintiff as approved by the Court.

Plaintiff's attorneys have determined that this settlement is a fair, reasonable, and adequate compromise for the Class.

11.     <u>Attorney's Fees, Notice Costs and Related Matters</u>.  Plaintiff's attorneys shall, subject to approval by the Court, receive attorney's fees of 30 percent plus litigation expenses from any recoveries for the Class from the Insurers, the Non-Settling Defendants and/or the Trusts.  Publication of the Initial Class Notice and fax notice will be arranged by Plaintiff's attorneys.  Settling Defendant has agreed to pay for the cost of the Initial Class Notice within 30 days of presentment of the invoice following the entry of the Preliminary Approval Order (as more fully described in paragraph 3).  Payment shall be made payable to Anderson + Wanca and shall be delivered to Anderson + Wanca.

12.     <u>Cooperation</u>.  Plaintiff and Settling Defendant agree to cooperate fully with one another to effect the consummation of this Settlement Agreement.  Settling Defendant agrees to provide reasonable assistance to Plaintiff's counsel and to comply with any reasonable subpoena in any action between Plaintiff on the one hand and any of the Insurers, Non-Settling Defendants, or Trusts, on the other.  This assistance shall include but not be limited to providing whatever consents are necessary for Plaintiff's counsel to obtain records from third party fax broadcasters and to making Settling Defendant's employees reasonably available to testify.

13.     <u>Notice and Class Administration</u>.  Plaintiff's counsel will issue notice of the settlement described herein by fax and publication as more fully described in paragraphs 3 and 4. Plaintiff's counsel shall file a final accounting of all settlement funds within sixty days of receipt of funds from the Insurers, the Non-Settling Defendants, or the Trusts.  Plaintiff's counsel shall distribute any recovery obtained on the Judgment from the Insurers, the Non-Settling Defendants, or the Trusts to the Class as required by the Court.  All disbursements from the

settlement fund resulting from any recovery from the Insurers, the Non-Settling Defendants, or the Trusts shall be approved by the Court.

14.    <u>Dismissal of Sanare, LLC</u>.  Within five (5) business days of the Effective, Plaintiff shall file a notice of dismissal with prejudice of Sanare, LLC, which shall state that Sanare, LLC is dismissed with prejudice as a party to this action and that the Parties shall bear their own attorneys' fees and costs.

15.    <u>Preliminary Approval</u>.  As soon as practicable after execution of this Settlement Agreement, the Parties shall apply to the Court for an order that:

 (a) Certifies the Class; and

 (b) Preliminarily approves this Settlement Agreement ;

 (c) Finds that the transmission of the Initial Class Notice by fax and publication of the Class Notice specified herein is the only Notice required and that such Notice satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure; and

 (d) Makes all of the findings set forth in Paragraph 7 above.

The Parties agree to propose the form of Preliminary Approval Order attached here as Exhibit 4 and to request the form of Initial Class Notice attached hereto as Exhibit 5A-B.  The fact that the Court may require non-substantive changes in the Initial Class Notice or Preliminary Approval Order does not invalidate this Settlement Agreement.  However, this Settlement Agreement is expressly contingent upon the Court making the findings described herein, and entering the Preliminary Approval Order and Final Order containing the Judgment.

16.    <u>Final Approval</u>.  At the conclusion of, or as soon as practicable after the close of the hearing on the fairness, reasonableness, and adequacy of this Settlement Agreement, counsel

for the Class and counsel for Defendants shall request that the Court enter a final order ("Final Order"):  (1) approving the terms of this Settlement Agreement; (2) making the findings set forth in paragraphs 7 and 15 above; (3) providing for the implementation of these terms and provisions of this Settlement Agreement; (4) finding that the Initial Class Notice satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; (5) entering the Judgment in the amount of $8,720,000.00 on Counts I and II in favor of Plaintiff and the Class; (6) finding that the Settlement Agreement prohibits Plaintiff and the Class members from executing against any assets or property of any kind of Settling Defendant and any of its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns (excluding the Non-Settling Defendants, the Insurers, or the Trusts); and (7) retaining jurisdiction to enforce the provisions of this Settlement Agreement.

17.     Form of Final Order.  The Parties agree to request a Final Order in the form attached hereto as Exhibit 6.  The fact that the Court may require non-substantive changes in the Final Order does not invalidate this Settlement Agreement.

18.     Settlement Agreement Contingent Upon Entry of Final Approval.  This Settlement Agreement is contingent upon entry of an order containing the Judgment and giving final approval to the terms of this Settlement Agreement.  If the Court refuses to grant final approval of the terms of the settlement set forth herein, or if the Court's Final Order is reversed or substantially modified on appeal, then this Settlement Agreement shall be null and void and no stipulation, representation or assertion of fact made in this Settlement Agreement or during the negotiation thereof may be used against, and is not admissible in any proceeding for any purpose .

19.    <u>Satisfaction of Judgment.</u> The Class agrees that, within 30 days after the later of the payment or satisfaction in full or settlement of the Judgment or the date of a final and non-appealable order entered by a Court in any litigation the Class members bring against the Insurers, the Trusts, or the Non-Settling Defendants finding that the Insurers, the Trusts, or the Non-Settling Defendants are not obligated to pay the amount of the Judgment or any portion thereof to the Class, the Class shall file a Satisfaction of Judgment of the Judgment reflecting that it has been satisfied in full and the Class shall be deemed to irrevocably and unconditionally release Settling Defendant and its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns, of and from all claims, demands, actions, causes of action, rights of action, contracts, controversies, covenants, obligations, agreements, damages, penalties, interest, fees (including attorneys' fees), expenses, costs, remedies, reckonings, extents, responsibilities, liabilities, suits, and proceedings of whatsoever kind, nature, or description, direct or indirect, vested or contingent, known or unknown, suspected or unsuspected, in statute, rule, contract, tort equity, or otherwise, under the laws of any jurisdiction, that they or their predecessors, legal representatives, heirs, executors, successors, and assigns, ever had, now has, or hereafter can, shall, or may have against Settling Defendant, and its officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns, as set forth above, jointly or severally, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world through, and including, the Effective Date, including, without limitation, those that were asserted or could have been asserted in the Litigation, or which arise or relate in any way to the Litigation or any dealings or course of conduct that Parties may have had up until the date of this Settlement Agreement.

20.     Retention of Rights.  Notwithstanding any of the other provisions of this Settlement Agreement and its Exhibits, DDS and Sanare retain all rights of indemnification against DDS Holdings under the MIPA and against the Trusts under the Shareholder Side Letter for any amounts above the Allocation.

21.     Miscellaneous Provisions.

A.     Requests for exclusion and objections to the Settlement Agreement or notices to Plaintiff and the Class shall be sent to Plaintiff's attorney:

> Ryan Kelly
> ANDERSON + WANCA
> 3701 Algonquin Road, Suite 760
> Rolling Meadows, IL  60008

B.     Requests for exclusion and notices to Defendants shall be sent to:

> John L. McManus
> Kenneth A. Horky
> Brian Koch
> Greenberg Traurig, P.A.
> 401 E. Las Olas Blvd., Suite 2000
> Ft. Lauderdale, FL 33301

C.     This Settlement Agreement (including its exhibits) is intended to be a full and complete expression of the Parties' agreement.  It supersedes any prior representation and agreement between the Parties or their legal counsel.  This Settlement Agreement may not be altered, amended, or extinguished except by a writing that expressly refers to this Settlement Agreement and is signed subsequent to the execution of this Settlement Agreement by all of the Parties.  This Settlement Agreement (together with the Exhibits thereto) constitutes an integrated, written contract, expressing the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes any and all contemporaneous, concurrent, and prior agreements, promises, acknowledgements, and understandings, oral or written, between the

Parties.  Until such time as this Settlement Agreement has been executed in full by all of the Parties: (a) its terms and conditions and any discussion relating thereto, without any exception whatsoever, shall not be binding nor enforceable for any purpose upon any Party; and (ii) no provision contained herein shall be construed as an inducement to act or withhold an action, or be relied upon as such.

D.      The Parties agree that any rule of interpretation requiring ambiguities to be resolved against the drafting Party shall not apply to the interpretation to this Settlement Agreement.

E.      This Settlement Agreement shall be governed by and interpreted by the laws of the State of Florida without regard to choice of law rules.

F.      This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original, and such counterparts together shall constitute one and the same instrument.  Facsimile signatures or e-mail signatures are acceptable for the execution of this Settlement Agreement.

G.      The Parties each further represent, warrant, and agree that, in executing this Settlement Agreement, they do so with full knowledge of any and all rights that they may have with respect to the claims released in this Settlement Agreement and that they have received independent legal counsel from their attorneys with regard to the facts involved and the controversy herein compromised and with regard to their rights arising out of such facts.

H.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, and to their respective officers, directors, employees, managers, members, managing members, shareholders, agents, executors, successors, or assigns.

I.      Each of the individuals executing this Settlement Agreement in a representative capacity on behalf of a Party warrants that he or she has the authority to enter into this Settlement Agreement and to legally bind the Party for which he or she is signing.

J.      No Party or its counsel shall issue any press release concerning the settlement of the Litigation.

**IN WITNESS WHEREOF,** the Parties have caused this Settlement Agreement to be executed on the date set forth underneath their respective signatures.

PHYSICIANS HEALTHSOURCE, INC.

By: _____

Its: _____PRESIDENT_____

Dated: _____12/12/13_____


DOCTOR DIABETIC SUPPLY, LLC

By: _____

Its: _____PRESIDENT_____

Dated: _____11 – 6 –13_____


SANARE, LLC

By: _____

Its: _____CEO_____

Dated: _____11 – 6 –13_____